[Crim. No. 1272.  Second Appellate District, Division Two.—January 15, 1926.]

## THE PEOPLE, Respondent, v. FRANK J. NOWAK et al., Appellants.

[1] CRIMINAL LAW—BURGLARY—EVIDENCE—VERDICT.—In this prosecution of two defendants for burglary, the evidence was sufficient to justify the jury in finding one of said defendants guilty of burglary in the second degree.

[2] ID.—EVIDENCE—APPEAL.—In such prosecution, the direct testimony of the people's witnesses at the trial of the case, if believed by the jury, must receive credence upon appeal.

[3] ID.—PURPOSE OF ENTRY—EVIDENCE—PROVINCE OF JURY.—In such prosecution, it was for the jury to decide whether or not a man caught crawling from the window of a building in the middle of the night, which building admittedly had been ransacked and the walls broken after 6:30 P. M., had entered with intent to commit grand or petit larceny or any felony.

[4] ID.—VERDICT—EVIDENCE—APPEAL.—An appellate court will not disturb a verdict based upon conflicting evidence, particularly after a motion for a new trial has been reviewed and denied by the trial court, unless it be made clearly to appear that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the trial court.

---

2.  See 8 Cal. Jur. 583.

3.  See 4 Cal. Jur. 745.

4.  See 8 Cal. Jur. 587.

[5] ID.—VERDICT—EVIDENCE.—In such prosecution, the evidence was insufficient to support the judgment of conviction of the other defendant.

[6] ID.—ARREST AND SENTENCE FOR VAGRANCY—SUBSEQUENT PROSECUTION FOR BURGLARY—FORMER JEOPARDY.—In such prosecution, the fact that the defendants, at the time of their arrest, were charged with vagrancy and later sentenced to serve a term in jail did not prevent their prosecution for burglary alleged to have been committed at the same time and place.

[7] ID. — MISCONDUCT — APPEAL. — In such prosecution, the contention that the district attorney should have been reprimanded by the trial court for misconduct in asking one of the defendants if he had not been convicted of a felony in another state under a different name is untenable where, notwithstanding the fact that said defendant was permitted to answer the question, to which he replied in the negative, the district attorney withdrew it and stated that the jury should disregard it.

[8] ID.—FORMER JEOPARDY—INSTRUCTION.—In such prosecution, the instruction given by the trial court to the effect that the prior conviction of vagrancy did not constitute former jeopardy in the case was proper.

(1) 9 C. J., p. 1085, n. 95.　(2) 9 C. J., p. 1076, n. 18.　(3) 17 C. J., p. 264, n. 88, p. 267, n. 99.　(4) 17 C. J., p. 264, n. 89, p. 271, n. 41.　(5) 9 C. J., p. 1076, n. 26 New.　(6) 16 C. J., p. 273, n. 24, 32 New; 39 Cyc., p. 1109, n. 7.　(7) 17 C. J., p. 300, n. 34.　(8) 16 C. J., p. 273, n. 32 New.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Crail, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Benjamin V. Elconin for Appellants.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellants and one Max Fenski were jointly charged by information with having committed the crime of burglary in the county of Los Angeles on or about the twenty-sixth day of February, 1925. Appellants were

6.　See 7 Cal. Jur. 957.

convicted of burglary in the second degree, but the jury failed to agree upon a verdict as to the defendant Fenski. A motion for new trial was presented in behalf of the former, which was denied, and they appeal from the order of the trial court upon such motion, and from the judgment.

The principal ground urged for reversal is an alleged insufficiency of evidence to sustain the verdict and judgment as to each appellant.

The testimony offered by the People was substantially as follows: Shortly after midnight of February 26, 1925, Police Officer Kunzman of the city of San Fernando while making his rounds, discovered a man who gave the name of Charles Larkin when arrested, but who thereafter proved to be Frank J. Nowak, one of the appellants above named, emerging from a window of the Studebaker salesroom and shops, in the Studebaker Building, at the corner of Celis Avenue and Brand Boulevard, in said city. Kunzman observed Nowak go to the sidewalk, stop, look, then return to the building, tap on a window, and immediately walk away. Kunzman pursued Nowak, calling upon him to stop, whereupon the latter started to run, but finally was arrested. At about that time a door of the Studebaker Building slammed, and the officer saw another man run across Brand Boulevard; Kunzman conducted his prisoner back to the said building and asked him .where his partner was, to which Nowak replied that he had no partner, but that he had a friend down the street about two blocks; the officer then took him to a near-by hotel and telephoned the police station for assistants. He then asked Nowak who helped him "do the job," and he denied that he did it, or that he had any partner, but later, when pressed, he said: "I did it; you find out who my partner is." The officer and Nowak then returned to the Studebaker Building, and were soon joined by the chief of police and other officers, two of whom were instructed to search the immediate vicinity, and to arrest anyone whom they might find on the streets.

The Studebaker Building was divided by a partition, consisting of brick and cement, which separated the automobile salesroom, on the east, from the office of the American Railway Express Company, on the west. The express agent in charge testified that at about 6:30 P. M. on the 26th he locked the office, leaving it in order. It appears from the

testimony of the officers that a hole large enough to permit the passage of an ordinary size man had been cut or broken through the partition from the salesroom into the express office, and a door had apparently been taken from its hinges; the floor of the express office was littered with books, files, drawers, and cards from interstate shipments; trunks had been opened, and the dial was battered off the safe.

Police Officers Fairfield and Rich, who were dispatched to patrol the neighborhood, testified that after some little reconnaissance they found a Studebaker machine standing at the curb near the corner of Wolfskill and Pico Streets; that when their spotlight was thrown on the car, a man was seen crouching down in the rear seat; that they placed him under arrest, and returned to the Studebaker Building with the machine and its occupant. This man gave the name of Andrew H. Nowak, and stated that he and his brother had traveled from Buffalo, New York, through Ohio, Georgia, Florida, Texas, and Arizona to Los Angeles, for the purpose of seeing the country; that they begged rides, walked and rode stages until they arrived at Yuma, where Frank and a boy by the name of Max Fenski, whom they picked up along the road, bought tickets and completed their journey by train. One of the officers testified that appellant Andrew H. Nowak later contradicted part of such statement, saying that all three men left Buffalo together; that they picked up another fellow somewhere in Arizona, and that all four rode into Yuma in a Ford coupe; that Frank and Fenski then came to Los Angeles by train, and that Andrew and the fourth man finished the trip in the Ford; that when asked why their stories conflicted, the two brothers engaged in a heated argument, wherein Frank asked Andrew, "For God's sake, what is the use of lying about it? Tell it all; tell the truth. Why are you lying?" and that one of them then insisted that they rode into Yuma on a train.

In the Studebaker automobile in which Andrew H. Nowak was arrested were found a suitcase, clothing, flashlights, hammers, two caps, and an overcoat; and on the street in the direction of this car from the building which had been rifled was found a revolver, which the express agent swore had been taken from a shipment in his office. No stolen property was found in the possession of either

of the appellants, and each of them strenuously denied having any knowledge of the robbery. They stated that they had purchased the Studebaker in Los Angeles, and that they were intending to return to Buffalo therein, but had lost their way in the night, and had parked in San Fernando to await daylight; that it was cold, and that Frank left his brother in the car and went in quest of a cheap lodging-house.

Officers of the police department and sheriff's office instituted thorough investigations as to the verity of appellant's statements regarding their past history and as to their whereabouts immediately preceding their apprehension. In the latter respects it was found that they had told approximately the truth; that appellant Frank J. Nowak had purchased the automobile as he claimed, that they had registered at a hotel which they had named and had attended a vaudeville and picture show on the afternoon or evening of the 26th. One or more of them had registered at said hotel under an *alias,* and Frank Nowak testified that he had worked in the east for a number of years under the name of Larkin. It was appellants' contention that having attended the theater in Los Angeles until late in the evening of the 26th of February it would have been impossible for them to have been at San Fernando at the time of the robbery. It appeared, however, that the distance between the two cities was but about twenty-two miles, and that they could have made the trip in about forty-five minutes. They were arrested after midnight, and there is no evidence in the record as to the time of the robbery; it is therefore impossible for us to say, as a matter of law, that appellants could not have been present when the offense was committed.

[1] We think the evidence may well have been deemed by the jury as amply sufficient to justify them in finding the appellant Frank J. Nowak guilty of burglary in the second degree. Each appellant vigorously protested his innocence, and maintained that the charges were the result of a "frame-up" on the part of Officer Kunzman; but appellants were not charged with the crime for a period of about two weeks after their arrest, in order that a searching investigation might be made of the officer's movements. It is apparent that their accusation of the officer was groundless. [2] The direct testimony of the People's witnesses

at the trial of the case, if believed by the jury, must receive credence upon appeal. (*People* v. *Lamb,* 67 Cal. App. 263 [227 Pac. 969].) [3] It was for the jury to decide whether or not a man caught crawling from the window of a building in the middle of the night, which building admittedly had been ransacked and the walls broken after 6:30 P. M., had entered with intent to commit grand or petit larceny or any felony. Throughout his protracted story of innocent travels, sightseeing, amusements, preparations to return east, and alleged persecution, appellant Frank J. Nowak nowhere attempted to deny that he came from the window of the Studebaker Building in San Fernando, except to contend that he must have been elsewhere, and that it was all a "frame-up" on the part of the officer. But it is an incontrovertible fact that he was arrested at San Fernando at the time alleged, which alone is sufficient to refute any claim of an alibi if the jury believed that he was in the building at the time. [4] At all events, the evidence raised an issue of fact for the jury, and appellate courts will not disturb a verdict based upon conflicting evidence, particularly after a motion for new trial has been reviewed and denied by the court below, unless it be made clearly to appear that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the trial court. (*People* v. *King,* 65 Cal. App. 306 [223 Pac. 1001].)

[5] Apparently conflicting stories of appellant Andrew H. Nowak, his suspicious act of crouching down in the machine upon approach of the officers, and the fact that he was a brother of Frank J. Nowak, and was in the latter's automobile, constitute about all that can be said as to evidence of his guilt. There was no evidence of Andrew Nowak having been the man who ran from the Studebaker Building, or that he had any knowledge of the robbery or as to his brother's whereabouts, other than that he supposed he had gone in search of lodgings. The jury may have believed that it was this appellant who dropped the revolver upon the street, but we are unable to find in the record any proof whatever that he had not remained in the machine from the time his brother left until the officers arrived. No witness saw him until the officers found him

in the car, and it did not appear that he had possession of any property claimed to have been stolen from said building. We think, therefore, that the record is devoid of that degree of substantial evidence of guilt necessary to an affirmance of the judgment as to Andrew H. Nowak.

[6] When appellants were arrested, they were charged with vagrancy in the justice's court at San Fernando, and sentenced to serve six months in jail. It was contended at the trial of this case that they had previously been placed in jeopardy in the vagrancy case, and could not therefore be prosecuted for burglary alleged to have been committed at the same time and place. There is no merit in this contention. Section 647 of the Penal Code provides that a known pickpocket, thief, burglar, or confidence operator, or a person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business, is a vagrant. We know of no rule which precludes the prosecution of a vagrant for burglary upon discovery of evidence of his guilty connection with the latter offense. We are not authorized to decide, nor does the record indicate, that the appellants were not afforded the opportunity for a fair trial upon the minor charge; we must assume that they were legally found guilty, and committed, therein, and it appears that while they were confined upon that charge they were formally accused of the crime of burglary.

[7] Another point attempted to be advanced for reversal is that the district attorney should have been reprimanded by the court for misconduct in asking the last-named appellant, Andrew H. Nowak, if he had not been convicted of a felony in the state of New York on August 3, 1917, under the name of Thomas Larkin. Notwithstanding the fact that this appellant was permitted to answer the question, to which he replied in the negative, the district attorney withdrew it and stated that the jury should dis regard it. The contention, we think, is untenable.

[8] Finally, it is said that the trial court erred in instructing the jury that the prior conviction of vagrancy did not constitute former jeopardy in this case. We have heretofore discussed this question, and upon the reasoning already expressed, we hold that the instruction was proper.

The judgment and order appealed from are affirmed as to appellant Frank J. Nowak and reversed as to appellant Andrew H. Nowak.

Finlayson, P. J., and Works, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1926.